203

CULLEN, Vice-Mayor, v. STATE, ex rel.
Ohio Supreme Court
No. 17482.    July 5, 1922
This opinion has not been published except in Abstract.
MANDAMUS—Not to be issued to compel observance of law generally—(2) Only specific acts enjoined.
ROBINSON, J.:
Epitomized Opinion
Error to the Court of Appeals, Lucas County

In 1915 Toledo adopted a home rule charter, which contained no code of rules governing the deliberations and procedure for 1905 and 1906, the original rules providing that the committees of council should be elected by that body.  In 1906 the rules were amended giving the right to the vice-mayor to appoint such committees.  These rules were observed and followed, up to January 22, 1922, this being the date of the first meeting of the new council elected at the preceding election.  Then a controversy arose as to which of two sets of rules and standing committees was the lawful one.  The vice-mayor recognized one and the council contended for the other.

The city solicitor then brought mandamus, this action asking the Court of Appeals of Lucas County to compel the vice-mayor and the president of the council to perform their duties as required by law and the city charter; to order them to recognize certain standing committees and not to interfere with the clerk in the performance of his alleged duties concerning legislation, and to require the clerk to do his legal duty in delivering legislation and papers to one of the two standing committees.  The Court of Appeals issued a peremptory writ commanding the defendant to recognize the rules and standing committee adopted and chosen by the council.  The Supreme Court reversed the Court of Appeals, holding:

1.  That a writ of mandamus will not be issued to compel the observance of law generally, but will be confined to commanding specific acts specially enjoined by law to be performed.

That the validity of the rules of council is not dependent upon the declaration of the vice-mayor. That the other things prayed for apply to a general course of conduct which the law requires, and that it is the function of a court to render judgment in actual controversies between adverse litigants, to command or restrate specific acts effecting existing rights of parties before the court, as distinguished from declaratory judgments affecting possible judgments and potential controversies.

Attorneys—Alonzo G. Duer; Curtis T. Johnson & Ben W. Johnson, for Cullen; F. M. Dotson and M. S. Dodd, for the City.

---

### JUDICIAL ETHICS.

The Committee on Judicial Ethics of the American Bar Association has submitted canons of judicial ethics to the Executive Committee of the Association.  This Committee in authorizing the publication of the draft of canons does so with an invitation to the members of the American Bar Association and lawyers everywhere to make suggestions by addressing Charles A. Boston, Esq., Acting Secretary, 24 Broad Street, New York City, before April 21st next, so that the code drafted by the Committee can be finally reported at the annual meeting of the Association fixed for the City of Minneapolis, August 29th, 30th and 31st, 1923.

The canons as drafted are as follows:

To the Executive Committee of the American Bar Association.

The Committee on Judicial Ethics, was appointed pursuant to a resolution of the Executive Committee at its meeting in January, 1922.

As originally constituted the Committee consisted of William H. Taft, District of Columbia; Leslie C. Cornish, Maine; Robert von Moschzisker, Pennsylvania; George Sutherland, Utah, and Charles A. Boston, New York, three occupying judicial positions, and two engaged in active practice as contemplated by the resolution.

Upon the selection of Mr. Sutherland for judicial office, his position on the Committee was deemed vacant, and Garret W. McEnerney, of California was designated in his stead.

---

### Ancient Precedents.

"And I charged your judges at that time, saying Hear the causes between your brethren, and judge righteously between every man and his brother, and the stranger that is with him.

"Ye shall not respect persons in judgment; but ye shall hear the small as well as the great; ye shall not be afraid of the face of man; for the judgment is God's; and the cause that is too hard for you, bring it unto me, and I will hear it."—Deuteronomy, I, 16-17.

"Thou shalt not wrest judgment; thou shalt not respect persons, neither take a gift; for a gift doth blind the eyes of the wise, and pervert the words of the righteous."—Deuteronomy, XVI, 19.

"Judges ought to remember that their office is jus dicere not jus dare; to interpret law, and not to make law, or give law."  *  *  *

"Judges ought to be more learned than witty; more reverend than plausible; and more advised than confident.  Above all things, integrity is their portion and proper virtue."  *  *  *

"Patience and gravity of hearing is an essential part of justice; and an over speaking judge is no well-tuned cymbal.  It is no grace to a judge first to find that which he might have heard in due time from the bar, or to show quickness of conceit in cutting off evidence or counsel too short; or to prevent information by questions though pertinent."  *  *  *

"The place of justice is a hallowed place, and therefore not only the bench, but the foot pace and precincts and purprise thereof ought to be preserved without scandal and corruption."  *  *  *—Bacon's Essay "of Judicature."